UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHENA BERRY,<br>509 O Street N.W.<br>Washington D.C. 20001<br><br>          Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>A Municipal Corporation<br>One Judicial Square<br>441 Fourth Street, N.W.<br>Washington D.C. 20001<br><br>          Defendant.<br><br>To Serve:<br><br>MURIEL BOWSER<br>MAYOR<br>District of Columbia<br>441 4th St. N.W. 11th Fl.<br>Washington D.C. 20002<br><br>BRIAN L SCHWALB<br>ATTORNEY GENERAL<br>District of Columbia<br>400 6th St. N.W.<br>Washington D.C. 20001 | Civil Action No. 25-cv-1285 (INT.) |

**COMPLAINT**

Plaintiff, Sheena Berry, through undersigned counsel, appeals an administrative hearing officer's decision and requests this Court reverse the hearing officer's decision on several issues: the District's decision to move C.B. to an inappropriate full-time self-contained placement; the District's failure to assess C.B. in all areas of suspected disability—specifically a speech-

1

language assessment—and the District's refusal to allow Ms. Berry's expert designee to observe C.B. in her current part-time placement. In support of her complaint, Ms. Berry alleges the following:

### Jurisdiction

1. This Court has jurisdiction pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C §§ 1400-1461, as amended in 2004, 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 5 D.C.M.R. § 3000.1 et seq. This Court also has supplemental jurisdiction pursuant to 28 U.S.C § 1367.

2. Declaratory relief is authorized by 28 U.S.C §§ 2201, 2202.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### Parties

4. Plaintiff, Sheena Berry is the mother of C.B; they are both residents of the District of Columbia. C.B. is eight years old and a third-grade student at Hyde-Addison Elementary School in the District of Columbia Public Schools. C.B. is a child with disabilities, including apraxia of speech, which is a neurological, speech-language disability.

5. Defendant, the District of Columbia, is a municipal corporation that receives federal funds under the IDEA. In exchange for those federal funds, the District must ensure all students with disabilities within its borders receive a free appropriate public education. 20 U.S.C. § 1412. The District of Columbia Public Schools is *non sui juris* of the District of Columbia Municipal Government.

### Factual Allegations

**Introduction**

6. Ms. Berry and her daughter—C.B.—reside in the District of Columbia.

7. C.B. is an eight-year-old student enrolled with the District of Columbia Public Schools ("DCPS").[1]

8. C.B. is a student with disabilities, including apraxia of speech.

9. C.B. is eligible for special education under the Individuals with Disabilities Education Act; she has an Individualized Education Program ("IEP") that prescribes her educational services and supports.

10. C.B.'s IEP prescribes both specialized instruction and related services among other supports and services, including four hours per month of speech-language therapy.

11. Since C.B. started at Hyde-Addison in Fall 2022, C.B.'s IEPs have been developed by her IEP team—comprised mostly of staff from Hyde-Addison Elementary School and C.B.'s mother, Ms. Berry.

12. In addition to prescribing the supports and services C.B. needs to receive an appropriate education on her IEP, the District must place C.B. in an appropriate educational placement—with her nondisabled peers to the maximum extent possible. 20 U.S.C. § 1412(a)(5).

13. DCPS has a continuum of alternative special-education placements. That continuum looks like this:



---

[1] For purposes of this document and case, the terms "DCPS" and "the District" are coterminous.

14. In November 2023, the IEP team placed C.B. in a part-time special-education program: she would spend 12 hours per week outside of general education in the resource room—the second box from the left—and the rest of the school week she would remain inside general education—the box all the way to the left.

15. The District has maintained that part-time placement since November 2023—including under the IDEA's stay-put mandate since October 2024.  20 U.S.C. § 1415(j).

16. But the District has wanted to move C.B. to a more restrictive placement since May 2024.

**The District proposed to move C.B. to an inappropriate full-time self-contained placement.**

17. At the beginning of the 2023-24 school year—C.B.'s second-grade year—C.B.'s IEP prescribed 6 hours of specialized instruction outside of general education.

18. The rest of the time, Cali would be in the regular classroom with her nondisabled peers.

19. Also about the beginning of the 23-24 school year, C.B. took an i-ready test that projected an appropriate amount of progress in both Math and Reading for C.B. by the end of that school year.

20. On the beginning of the year i-ready testing—even though C.B. was in a second-grade classroom—C.B. scored in the Kindergarten level in both Math and Reading.

21. A few months later, in November 2023, the District maintained C.B. in the same part-time placement, but it doubled C.B.'s hours of special education outside of general education per week from 6 to 12.

22. A few months after that increase, in January 2024, C.B. took the mid-year i-ready assessment.

23. On the mid-year assessment, C.B. exceeded her expected progress in both Math and Reading.

24. By the end of the year assessment in May 2024, C.B. had exceeded her annual stretch goal in Math; she even exceeded a higher "stretch goal," which was an ambitious goal for C.B.

25. In Reading, C.B. nearly met her annual goal. She fell just three points shy of her annual goal making 41 points of progress out of the expected 44—93% to her annual goal.

26. Further, at the beginning of the next school year, C.B. scored in the first-grade level in both Reading and Math: she progressed from the Kindergarten level in Fall 2023 to the first-grade level in Fall 2024.

27. Recall that C.B. had not had 12 hours of specialized instruction for a year at this point; she had the increased services only since November 2023—not the beginning of the school year.

28. This 2024-25 school year—in the same part-time placement—C.B. has already progressed 97% to her annual goal in Reading by the mid-year testing in January 2025.

29. Likewise, Ms. Boria—C.B.'s special-education teacher—testified at the due-process hearing that she would expect C.B. to make one years' worth of progress in one year: "I would not expect [C.B.] to be on grade level if they're two years behind . . . I would expect her to grow a full year's worth within working with her for a year, so one grade level below." DPH Trans. Day 3 at 114-16.

30. Although C.B. made progress appropriate given her unique needs and circumstances, the District still proposed to move C.B. to a more restrictive self-contained placement at the end of the 2023-24 school year in May 2024. This is a change in placement to the middle box on the District's continuum of alternative placements as depicted again here:



31. After the due-process hearing, the hearing officer blessed the District's change in placement.

32. The hearing officer required C.B. to make twice as much progress as was appropriate for her: to make two years' worth of progress in one year and catch up to grade level.

33. Ms. Berry now appeals because it was and continues to be inappropriate to move C.B. to a more restrictive placement when she made progress appropriate in light of her unique needs and circumstances.

**The District's failure to evaluate C.B. in all areas of suspected disability.**

34. Before the District proposed to move C.B. to a more restrictive self-contained placement in May 2024, it decided to reevaluate C.B.

35. In February 2024, the District decided to reevaluate C.B. after it made the following determinations:

    a) The District determined that it did not have enough information in all areas of suspected disability to determine if the C.B. has or continues to have a disability;

    b) The District determined that it did not have enough information in all areas of concern to determine the educational needs of C.B., including the present levels of academic achievement and related developmental needs of C.B. and any additions or modifications needed to enable C.B. to make progress that is appropriate in light of her circumstances; and

    c) The District determined did not have enough information in all areas of concern to determine whether the child needs or continues to need special education and related services.

36. Since C.B. enrolled in DCPS in Fall 2022, the District has been aware that C.B. has speech-language concerns.

37. The District is aware that C.B. has childhood apraxia of speech.

38. The District received and reviewed C.B.'s speech-language assessment ordered by Friendship Public Charter School in Spring 2022.

39. The District has provided C.B. with four hours per month of speech-language services since C.B. started at DCPS nearly three years ago.

40. At the due-process hearing, several of DCPS's witnesses discussed C.B.'s speech-language concerns in school.

41. Yet, the District did not order a speech-language assessment as part of its reevaluation in Spring 2024.

42. Because the District did not assess C.B. in the area of speech and language, Ms. Berry obtained and paid for her own speech-language assessment in November 2024.

43. This November 2024 speech-language assessment cost about $600.

44. Ms. Berry asked the hearing officer to reimburse her for the cost of the speech-language assessment.

45. But the hearing officer declined to reimburse Ms. Berry for the cost of the speech-language assessment.

46. Ms. Berry now appeals to recover the cost of the speech-language assessment because the District failed to assess C.B. in all areas of suspected disability

**The District denied Ms. Berry's request to have her expert designee observe C.B. in school.**

47. On November 13, 2024, Ms. Berry requested to have a special-education expert—Ms. Amy Mounce—observe C.B. in school.

48. Ms. Berry made this request in writing by email to a DCPS school official.

49. Over a week later, DCPS's counsel, Ms. Tanya Chor, declined Ms. Berry's request for Ms. Mounce to observe.

50. The District's counsel declined the observation "for litigation purposes."

51. During the due-process proceedings, Ms. Berry moved for summary judgment on the observation issue; she requested the hearing officer allow the observation so that Ms. Mounce could testify about her observation at the upcoming due-process hearing.

52. Ms. Berry requested that the hearing officer grant her summary judgment and order the District to allow her expert to observe C.B. in her current placement at Hyde-Addison.

53. The hearing officer ruled that the District cannot reject an observation request "for the purpose of litigation."

54. But the hearing officer *sua sponte* declined the observation request because he deemed Ms. Berry's expert to represent her in litigation.

55. As a result, the hearing officer barred Ms. Mounce from observing and testifying about that observation at the due-process hearing.

56. This prohibition blocked Ms. Berry from fully pressing her claims—including her inappropriate placement claim—at the underlying due-process hearing.

57. Further, the hearing officer refused to admit into evidence a written report from Ms. Mounce explaining how an observation of C.B. would be informative and helpful in forming an opinion about C.B.'s educational programming and placement.

58. The District did not move for summary judgment on this issue.  Nor did the hearing officer grant summary judgment on the observation issue for the District.   Thus, the issue remained live at the due-process hearing.

59. After the due-process hearing, the hearing officer essentially affirmed his prior decision denying summary judgment to Ms. Berry:  DCPS cannot block an observation "for the purpose of litigation," but Ms. Mounce cannot observe because she, in the hearing officer's opinion, represents Ms. Berry in litigation.

60. But in the District's administrative hearing office and on appeal in this Court, only licensed attorneys may represent Ms. Berry in IDEA litigation.

61. The District's standard operating procedures that govern administrative IDEA disputes bars nonlawyers from representing parents in IDEA disputes.

62. This is explicitly stated:

    a) "A parent/legal guardian may be represented by counsel throughout a due process proceeding. A parent may also be accompanied and advised, but not represented, by any other individuals with special knowledge or training with respect to the problems of children with disabilities." OSSE SOP § 401(B).

63. The hearing officer ignored this authority.

64. Likewise, nonlawyers may not represent plaintiffs before this Court.

65. Ms. Amy Mounce is not a lawyer; she cannot represent Ms. Berry in any litigation in the District of Columbia.

66. Ms. Berry now appeals.

67. Because Ms. Mounce is an expert in special education programming and placement—not a lawyer—she cannot represent Ms. Berry in litigation. The hearing officer erred in finding otherwise.

### Ms. Berry's first claim:  The District's inappropriate placement.

68. Ms. Berry re-alleges and incorporates herein by reference each and every allegation contained in all preceding paragraphs as though fully set forth herein.

69. The IDEA requires schools to provide each eligible student with a free appropriate public education alongside their nondisabled peers to the greatest extent possible.  20 U.S.C. § 1412.

70. To ensure maximum inclusion, the IDEA bars schools from moving a child to a more restrictive placement, when that child can make appropriate progress in a less-restrictive placement.  20 U.S.C. § 1412(a)(5)(A).

71. And each child's expected appropriate progress is set individually:  based on the child's unique needs and circumstances.  *Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386 (2017).

72. For a child who is not fully integrated in the regular classroom—like C.B.—the child need not aim for grade-level advancement to make appropriate progress.  *Endrew F.* at 402.

73. For C.B. in particular, her special-education teacher and i-ready testing set C.B.'s appropriate progress for the 2023-24 school year:  about one years' worth of progress in one year.

74. At the beginning of the 2023-24 school year, C.B. scored on the Kindergarten level in Reading and Math.

75. At the beginning of the 2024-25 school year, C.B. scored on the first-grade level in both Reading and Math.

76. In May 2024—as the hearing officer concluded—C.B.'s i-ready scores showed she made "dramatic" and "impressive" growth over the 2023-24 school year.

77. Despite this progress, at the end of the 2023-24 school year, the District proposed to move C.B. to a more-restrictive self-contained educational placement.

78. The hearing officer blessed the District's proposed change in placement.

79. But the hearing officer required C.B. to make twice as much progress as was appropriate for her to remain in the less restrictive placement: to make two years' worth of progress in one year and catch up to grade level.

80. Because the hearing officer required C.B. to make twice as much progress as appropriate for her, the hearing officer erred.

81. It was inappropriate to move C.B. to a more restrictive self-contained placement.

**Ms. Berry's second claim: The District's failure to evaluate.**

82. Ms. Berry re-alleges and incorporates herein by reference each and every allegation contained in all preceding paragraphs as though fully set forth herein.

83. When a school reevaluates a child, the IDEA requires the school to assess the child in all areas of suspected disability. 20 U.S.C. § 1414(a)(2); 20 U.S.C. § 1414(b)(3).

84. Since C.B. started at DCPS in Fall 2022, DCPS has known that speech and language is an area of concern for C.B., including her apraxia of speech.

85. In Spring 2024, ahead of C.B. annual IEP meeting at the end of the 2023-24 school year, the District decided to reevaluate C.B. to determine if she continues to have a disability, if she remains eligible for IDEA services, and, if so, to determine her educational needs.

86. But the District failed to assess C.B. in the area of speech-language pathology.

87. Thus, the District failed to assess C.B. in all areas of suspected disability.

88. Instead, Ms. Berry took it upon herself to obtain a speech-language assessment.

89. Ms. Berry paid about $600 for a speech-language assessment.

90. Because the hearing officer found that the District assessed C.B. in all areas of suspected disability and declined to reimburse Ms. Berry for the cost of the speech-language assessment that she obtained, the hearing officer erred.

**Ms. Berry's third claim: The observation denial.**

91. Ms. Berry re-alleges and incorporates herein by reference each and every allegation contained in all preceding paragraphs as though fully set forth herein.

92. Under the D.C. Code, parents may designate a special-education expert to observe their child in school, so that they are informed and empowered at all times during the special-education process.

93. On November 13, 2024, Ms. Berry requested in writing that Ms. Amy Mounce—and expert in special education—observe C.B. in her current placement at Hyde Addison Elementary School.

94. The District denied that observation "for litigation purposes."

95. Although the hearing officer rejected the District's reason for denying the observation request, he nonetheless denied the observation request because—in his opinion—Ms. Mounce represented Ms. Berry in litigation.

96. But only licensed attorneys in the District may represent parents in IDEA proceedings—both in the administrative hearing office and this Court.

97. Ms. Mounce is not an attorney; she is a special-education expert.

98. Because Ms. Mounce could not testify about an observation of C.B. in school, Ms. Berry could not fully press her claims—including her inappropriate IEP claim—before the hearing officer.

99. Thus, the hearing officer erred in denying Ms. Berry's request to have her special-education expert observe C.B. in her current educational placement.

100. After the hearing officer decision, Ms. Berry renewed her request for Ms. Mounce to observe C.B. in her current placement at Hyde-Addison ahead the next IEP meeting.

101. The District declined that observation request.

## Relief

WHEREFORE, Plaintiff, Ms. Berry requests that this Court:

102. Declare that in May 2024, it was inappropriate for the District to move C.B. to a more restrictive self-contained placement on her IEP.

103. Declare that the hearing officer erred in approving the District's decision to move C.B. to a more restrictive environment in May 2024.

104. Declare that—under the IDEA—C.B.'s appropriate progress is to be measured based on her unique needs and circumstances; she is not required to catch up to grade level to remain in a less restrictive environment.

105. Declare that C.B.'s May 2024 IEP was inappropriate because it placed C.B. in an inappropriate educational placement.

106. Order the District to place C.B. in an appropriate part-time special education placement, including updating C.B.'s IEP to reflect a part-time special-education placement.

107. Alternatively, remand this matter back to the hearing officer to determine the appropriateness of C.B.'s May 2024 educational placement—this time without the misconception that C.B. must achieve on grade level to remain in the part-time placement.

108. Declare that the District failed to assess C.B. in all areas of suspected disability.

109. Declare that the hearing officer erred in finding the District assessed C.B. in all areas of suspected disability—even though the District failed to perform a speech-language assessment for C.B.

110. Order the District to reimburse Ms. Berry for the cost of the speech-language assessment she obtained when the District failed to perform that assessment: the reimbursement amount is about $600.00.

111. Declare that the District was wrong to deny Ms. Berry's observation request.

112. Declare that the hearing officer erred when he found that Ms. Berry's educational expert represented Ms. Berry in litigation.

113. Order the District to allow Ms. Berry to have an expert designee observe C.B. in her current placement at Hyde-Addison Elementary School.

114. Order an evidentiary hearing for the court to consider the results of the expert-designee's observation.

115. Alternatively, instruct the hearing officer on remand to consider the results of Ms. Berry's expert-designee observation regarding Ms. Berry's other claims including the inappropriate-placement claim.

116. Award appropriate compensatory education or award a compensatory-education study, including potentially seeking the IEP team's input before crafting the award;

117. Award Plaintiff's attorney fees and costs of this action; and

118.    Award any other relief that the Court deems just and proper.

                              Respectfully submitted,

                              /s/ *Charles Sibert*
                              Charles Sibert [1510808]
                              Moran & Associates
                              1100 H Street, Suite 810
                              Washington, D.C. 20005
                              (240) 406-7944 (phone)
                              charles.sibert@camoranlaw.com

                              /s/ *Charles Moran*
                              Charles Moran [970871]
                              Moran & Associates
                              1100 H Street, Suite 810
                              Washington, D.C. 20005
                              (240) 406-7944 (phone)
                              charles.moran@camoranlaw.com
                              *Counsel for Plaintiff*